# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| MARISSA M. DRURY-JENKINS,<br><br>    Plaintiff,<br><br>v.<br><br>REGENCY FURNITURE OF<br>BRANDYWINE, INC.,<br>REGENCY MANAGEMENT SERVICES,<br>LLC,<br>REGENCY FURNITURE, INC. and<br>ABDUL AYYAD,<br><br>    Defendants. | Civil Action No. TDC-16-3066 |

## MEMORANDUM OPINION

Marissa M. Drury-Jenkins, a former employee of Regency Furniture of Brandywine, Inc., filed this action alleging that Defendants discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17 (2012), and 42 U.S.C. § 1981. Pending before the Court is Defendants' Motion to Compel Arbitration or, in the Alternative, for Summary Judgment and Defendant Abdul Ayyad's Alternative Motion to Dismiss. For the reasons set forth below, the Motion is granted in part and denied in part.

## BACKGROUND

### I.     Alleged Discrimination

From September 3, 2011 to September 3, 2012, Drury-Jenkins worked as a part-time sales representative at Regency Furniture of Brandywine, Inc. ("Regency"), a business that sells home furnishings. Her salary was largely based on commissions. Regency Furniture, Inc. owns and controls Regency, which, along with Regency Management Services, LLC (collectively, the

"Regency Defendants"), has identified itself as Drury-Jenkins's employer in connection with her employment dispute. Abdul Ayyad ("Ayyad") is the president of both Regency and Regency Furniture, Inc., as well as a majority shareholder of each of the Regency Defendants.

Drury-Jenkins asserts that during the course of her employment, Assistant Manager Darrell Edwards and Sales Manager Fela Fuller made sexually explicit remarks and offensive comments to her relating to Asian individuals—and Filipina women in particular—on a daily basis. Some of the offensive comments were made in front of customers. Fuller also regularly propositioned Drury-Jenkins to engage in sexual activity with him. Ayyad and Manager Ammad Ayyad witnessed some of the comments and laughed in response. Drury-Jenkins alleges that, while she worked at Regency, she was the only Filipina employee and that women of other ethnicities were not subject to similar harassment. Drury-Jenkins not only told Edwards and Fuller that the offensive comments and sexual advances were inappropriate, but also submitted to Ayyad written protests through certified mail and other means.

On July 8, 2012, after an argument among several employees regarding the system for assigning walk-in customers to salespeople, Edwards called Drury-Jenkins a "Filipino whore" and verbally threatened her and her family. Compl. ¶¶ 87-88, ECF No. 1. When Drury-Jenkins sought to visit the office of Director of Human Resources Sherrie Groce to report the threats, Fuller warned her that "if you say anything to her, you will lose your job." *Id.* ¶ 91. Drury-Jenkins then submitted a written memorandum to Groce to report the threats and harassment. Drury-Jenkins received no response to her complaint. But when, on July 14, 2012, Fuller falsely told Human Resources that Drury-Jenkins was starting fights, she was suspended without pay for two weeks.

Drury-Jenkins then wrote to Ayyad to request assurance of her safety and asked for a meeting to discuss the harassment. She received no response. After a second letter to Ayyad went unheeded, she wrote to Groce complaining that Human Resources was protecting Edwards and Fuller and asking for two weeks of leave to address the depression she suffered as a result of the workplace harassment. On August 3, 2012, Regency Vice President of Operations David Hu questioned Drury-Jenkins about her allegations and then summarily dismissed them. Following that meeting, Drury-Jenkins wrote to Groce stating that she did not feel comfortable discussing the situation with Hu and that she continued to fear for her safety. She also wrote a letter to Hu asserting that Regency was violating Title VII. On September 3, 2012, after Edwards made additional offensive comments, and both Edwards and Fuller threatened to kill her, Drury-Jenkins called 911. After the police left the store, Ammad Ayyad told Drury-Jenkins, "Get the fuck out and don't come back to this property ever again; you embarrassed us by calling 9-1-1!" *Id.* ¶ 132. He also told her that since she "hired a lawyer and called 911," she was no longer welcome to work at Regency. *Id.* ¶ 133.

On or about November 3, 2012, Drury-Jenkins filed a discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC"), alleging a hostile work environment and discriminatory termination on the basis of race, sex, age, and national origin, as well as retaliation. She received a Notice of Right to Sue from the EEOC on June 15, 2016. On September 2, 2016, Drury-Jenkins filed this Complaint alleging claims of a hostile work environment based on race and sex, discriminatory suspension and termination based on race and sex, and retaliation for engaging in protected activity, in violation of Title VII and 42 U.S.C. § 1981.

## II. The Arbitration Agreement

Defendants have attached to their Motion a copy of an Employment at Will and Arbitration Agreement (the "Agreement"), which was signed by Drury-Jenkins in September 2011 and the authenticity of which she does not dispute. The Agreement provides that:

> **Except for exclusively monetary claims of less than $5,000. any dispute or controversy (including the question of whether the dispute or controversy is subject to arbitration)** which would other require or allow resort to any court or other governmental dispute resolution forum between the Employee and the Company (or its owners, employees, agents, directors, and officers, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with employment by, or other association with the Company, whether based on tort, contract, statutory or common law, equity or otherwise, specifically including but not limited to any and all matter arising un the Constitution of the United States or of any state, *the Employment Retirement Income Security Act,* Title VVI of the Civil Rights Act of 1964, the Civil Rights Act of 1866, 1871, and 1991, the Rehabilitation Act, the Equal Pay Act, the Vietnam Era Veterans Readjustment Assistance Act, the Immigration Reform Control Act, the Americans with Disabilities Act, and the Older Worker's Benefits Protection Act, similar state and local statutes, regulations, and ordinances, as well as any other deferral. State, or local injury, civil rights, or employment related laws, regulations, rules, or theories (except for worker's compensation claims which shall not be subject to these procedures) **shall be submitted to, and determined by, binding arbitration under the Federal Arbitration Act.**

J.R. 000005 (grammatical and typographical errors in original) (bolded emphasis added), ECF No. 15. The Agreement also includes the following language which appears to relate to an appeal of the arbitrator's decision ("the Appeal Provision"):

> As reasonably to required to allow full use and benefit of proceedings pursuant hereto, the arbitrator may extend exceeding $50,000 shall subject to reversal, modification, or reduction, following review of the record and arguments of the parties by a second arbitrator whose decision is challenged and who shall, as far as practicable, proceed according to the law and procedures applicable to the appellate review by the highest court of the state in which the employer does business of a civil judgment following court trial.

*Id.* (grammatical errors in original).

4

## DISCUSSION

In their Motion, Defendants first seek an order compelling arbitration of Drury-Jenkins's claims under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2012), and dismissing this action on the grounds that Drury-Jenkins's claims are covered by a valid arbitration agreement that requires the arbitrator both to decide whether the dispute is subject to arbitration and to resolve the merits of the discrimination and retaliation claims. In the alternative, if the Court declines to compel arbitration, Defendant Ayyad argues that the claims against him should be dismissed for failure to state a claim because he lacked personal involvement in the alleged discrimination and the claims are time-barred.

### I. Legal Standard

Judges in this District have recognized that "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (quoting *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)); *PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). Treating a motion to compel arbitration as a motion for summary judgment is proper where "the formation or validity of the arbitration agreement is in dispute," *Caire*, 982 F. Supp. 2d at 589, or where documents outside the pleadings must be considered "to effectively assess the merits of [the] motion," *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683-84 (D. Md. 2004); *accord PC Const. Co.*, 871 F. Supp. 2d at 477 ("Whether the motion [to compel arbitration] should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings."). *See also Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 & n.3 (4th Cir. 2016) (stating that under the FAA, a party seeking a jury trial "must show

genuine issues of material fact regarding the existence of an agreement to arbitrate," a standard that is "akin to the burden on summary judgment" (quoting *Chorley Enters. v. Dickey's Barbecue Rests.*, 807 F.3d 553, 564 (4th Cir. 2015))). Here, the Court applies the summary judgment standard because Defendants' argument that the Court should compel arbitration requires an assessment of the Agreement, which is outside the pleadings.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Arbitrability

The Agreement generally provides that any "dispute or controversy" between Drury-Jenkins and "the Company" or "its owners, employees, agents, directors, and officers" must be submitted to binding arbitration. J.R. 000005. This language would appear to encompass the claims against the Regency Defendants and Ayyad. Defendants argue that based on the

Agreement, all claims in this case must be heard by an arbitrator, not this Court. Motions to compel arbitration generally require courts to engage in a "two-step inquiry": "First, we determine *who* decides whether a particular dispute is arbitrable: the arbitrator or the court. Second, if we conclude that the court is the proper forum in which to adjudicate arbitrability, we then decide *whether* the dispute is, in fact, arbitrable." *Peabody Holding Co., LLC v. United Mine Workers of America, Int'l Union*, 665 F.3d 96, 101 (4th Cir. 2012). In this case, the Court need not go past the first step.

Generally, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). This federal presumption in favor of arbitration, however, does not "apply to the issue of which claims are arbitrable." *Carson v. Giant Good, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (internal brackets omitted) (quoting *AT&T Techns., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649 (1986)). Accordingly, the Court must decide whether the Agreement "clearly and unmistakably" provides that the "arbitrator shall determine what disputes the parties agreed to arbitrate." *Carson*, 175 F.3d at 329.

Here, Defendants do not rely on a "broad arbitration clause[] that generally commit[s] all interpretive disputes 'relating to' or 'arising out of' the agreement" to an arbitrator. *Carson*, 175 F.3d at 330 (stating that expansive general arbitration clauses "do not satisfy the clear and unmistakable test"). Rather, the Agreement contains specific language addressing arbitrability, sometimes referred to as a "delegation provision." *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). The Agreement states that "[e]xcept for exclusively monetary claims of

7

less than $5,000[,] any dispute or controversy (*including the question of whether the dispute or controversy is subject to arbitration*) . . . shall be submitted to, and determined by, binding arbitration under the Federal Arbitration Act." J.R. 000005 (emphasis added). The "clear and specific" plain language of the delegation provision explicitly grants the arbitrator jurisdiction over questions of arbitrability. *Carson*, 175 F.3d at 330; *see Allen v. Regions Bank*, 389 F. App'x 441, 446 (5th Cir. 2010) (stating that a provision providing that "Any dispute regarding whether a particular controversy is subject to arbitration . . . shall be decided by the arbitrator(s)" was sufficiently clear to "demand arbitration of arbitrability"); *Rum v. DARCARS of New Carrollton, Inc.*, No. DKC 12-0366, 2012 WL 2847628, at *6 (D. Md. July 10, 2012) (holding that based on language stating that an arbitration agreement applied to "any dispute or controversy (including the question of whether the dispute or controversy is subject to arbitration)," the parties had agreed to have an arbitrator determine arbitrability).

The Court is not persuaded by Drury-Jenkins's arguments to the contrary. First, Drury-Jenkins contends that the delegation provision is not "clear and unmistakable" because its language stating that "the question of whether the dispute or controversy is subject to arbitration," refers not to the question of arbitrability, but to the issue whether the dispute is "of the type" that is "potentially amenable" to arbitration. Pl.'s Opp'n 4-5, ECF No. 13. Drury-Jenkins's cramped reading of "subject to arbitration," however, is refuted by the common usage of that term to refer to the question of arbitrability. *E.g., Crawford v. Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014) (using "whether a claim is subject to arbitration" interchangeably with the term "arbitrability"); *China Minmetals Materials Import & Export Co. v. Chi Mei Corp.*, 334 F.3d 274, 280 (3d Cir. 2003) (describing arbitrability as "the question whether a certain dispute is subject to arbitration under the terms of a given

8

agreement"); *S. Cal. Dist. Council of Laborers v. Berry Constr.*, 984 F.2d 340, 344 (9th Cir. 1993) (referring to "whether a dispute is subject to arbitration" to describe "arbitrability"); *Willcock v. My Goodness Games, Inc.*, No. PWG-16-4020, 2017 WL 2537010, at *1 (D. Md. June 12, 2017) (using "whether the disputes between the two Parties are subject to arbitration" interchangeably with the phrase "arbitrability of the claims"). The Court likewise finds no distinction between the terms.

Second, Drury-Jenkins faults the delegation provision's failure to employ the specific language suggested by the United States Court of Appeals for the Fourth Circuit in *Carson*, in which the court stated: "Those who wish to let an arbitrator decide which issues are arbitrable need only state that 'all disputes concerning the arbitrability of particular disputes under this contract are hereby committed to arbitration,' or words to that clear effect." *Carson*, 175 F.3d at 330-31. Parties, however, are not limited to using certain words or phrases to express their intent to arbitrate arbitrability. To the contrary, the specific language of the delegation provision has been found by another judge in this District to evince a "clear and unmistakable" intent to delegate the arbitrability determination to an arbitrator. *Rum*, 2012 WL 2847628 at *6.

Third, Drury-Jenkins argues that the intervening language and typographical errors between "subject to arbitration" and "shall be submitted to, and determined by, binding arbitration" render the delegation provision less than "clear and unmistakable." This intervening text, however, provides examples of the types of disputes subject to arbitration and does not detract from the parties' specific intent to arbitrate arbitrability. Drury-Jenkins does not credibly explain how it could be read to do so.

Finally, Drury-Jenkins claims that the inclusion of the Agreement's Appeal Provision, which is difficult to construe and contains numerous grammatical errors, renders the Agreement

as a whole unenforceable because it presumes that the decision of the arbitrator would not be final. However, whether the Appeal Provision renders the Agreement unenforceable is itself a "question of arbitrability," a term which includes "certain gateway matters, such as whether parties have a valid arbitration agreement at all." *Oxford Health Plans, LLC v. Sutter*, 133 S. Ct. 2064, 2068-69 n.2 (2013). As discussed above, the delegation provision constitutes a valid agreement to arbitrate questions of arbitrability, and Drury-Jenkins' argument relating to the Appeal Provision does nothing to invalidate it. Courts generally construe a delegation provision to be a separate agreement that must be enforced unless a party specifically challenges its validity. *Rent-A-Center West*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce . . . ."); *Meena Enters., Inc. v. Mail Boxes Etc.*, No. DKC 12-1360, 2012 WL 4863695, at *6 & n.7 (D. Md. Oct. 11, 2012) (analyzing a delegation provision separately from the remainder of the arbitration clause); *In re Toyota Motor Corp.*, 838 F. Supp. 2d 967, 982 (C.D. Cal. 2012). "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center West*, 561 U.S. at 70. Thus, where there is a delegation provision, "the Court must examine only whether there is a valid delegation provision and, if there is, the Court must enforce the delegation provision by compelling arbitration and reserving for the arbitrator issues that implicate the agreement to arbitrate as a whole." *In re Toyota Motor Corp.*, 838 F. Supp. 2d at 982.

The challenge to the Appeal Provision or the Agreement as a whole, as a "question of arbitrability," must therefore be decided by an arbitrator pursuant to the delegation provision's requirement that "the question of whether the dispute or controversy is subject to arbitration . . . shall be submitted to, and determined by, binding arbitration under the Federal Arbitration Act."

J.R. 000005. Accordingly, the Motion to Compel Arbitration will be granted, and the Court does not address either the parties' arguments on the enforceability of the Appeal Provision and the Agreement or Ayyad's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III. Dismissal

Having found that the Agreement requires an arbitrator to determine the gateway issue of arbitrability, the Court must decide whether to dismiss the action. The Fourth Circuit has held that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). At the same time, the FAA "requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements." *Id.* at 709; *see* 9 U.S.C. § 3 (providing that a court, when an issue is "referable to arbitration" under an arbitration agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). Because at the present time the issue of arbitrability has not been resolved, and will instead be decided by the arbitrator, Drury-Jenkins may file, within seven days of the date of the Order accompanying this Memorandum Opinion, a motion to stay the judicial proceedings pending the outcome of the arbitration proceeding. If no such motion is filed, the Complaint shall be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Compel Arbitration or, in the Alternative, for Summary Judgment and Defendant Abdul Ayyad's Alternative Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion is granted to the extent that the Court will compel the parties to proceed to arbitration for resolution of the arbitrability

of Drury-Jenkins's claims. The Motion is denied to the extent that Defendants seek immediate dismissal of the action. A separate Order shall issue.

Date: June 29, 2017

THEODORE D. CHUANG
United States District Judge